1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Aug 13, 2020**

SEAN F. McAVOY, CLERK

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

CHRISTOPHER RYAN B.,

8

Plaintiff,

No.  1:19-CV-03129-RHW

9

v.

10

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

ANDREW M. SAUL,
Commissioner of Social Security,

11

12

Defendant.

13

Before the Court are the parties' cross-motions for summary judgment. ECF

14

Nos. 11, 12. Plaintiff brings this action seeking judicial review of the

15

Commissioner of Social Security's final decision, which denied his application for

16

supplemental security income under Title XVI of the Social Security Act, 42

17

U.S.C. §1381-1383F. *See* Administrative Record (AR) at 679-706. After reviewing

18

the administrative record and briefs filed by the parties, the Court **GRANTS**

19

Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for

20

Summary Judgment.

# I.    Jurisdiction

Plaintiff filed his application for supplemental security income on January 30, 2013, alleging disability beginning December 14, 2012.[1] *See* AR 20, 196. Plaintiff's application was initially denied on April 17, 2013, *see* AR 107-119, and on reconsideration on June 14, 2013. *See* AR 123-134. Plaintiff then requested a hearing. AR 135-38.

A hearing with an Administrative Law Judge ("ALJ") occurred on December 22, 2014. AR 41-81. On January 29, 2015, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 17-39. On May 10, 2016, the Appeals Council denied Plaintiff's request for review, AR 1-7, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 11, 2016, Plaintiff filed a complaint in this district challenging the denial of benefits. AR 767-69; *see Christopher B. v. Colvin*, 1:16-CV-03135-LRS, ECF No. 3 (E.D. Wash. 2016). Plaintiff later moved for summary judgment, arguing that the ALJ: (1) improperly characterized his mental health condition as a generic "mood disorder" rather than as bipolar disorder or schizoaffective disorder, (2) improperly discounted his credibility, and (3) improperly weighed the opinions

---

[1] However, for claims under Title XVI, benefits are not payable until the month after the application's filing date. *See* 20 C.F.R. § 416.335. At the hearing, Plaintiff amended his alleged onset date to the date of his application. AR 42.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

and statements from several medical and lay witnesses. *See Christopher B.*, 1:16-CV-03135-LRS, ECF No. 13 at 7-21.

The court agreed with Plaintiff's first argument, concluding that the record was inadequate to determine whether Plaintiff suffers from a schizoaffective disorder. *Id.*, ECF No. 17 at 10. The court remanded the case for further development of the record—specifically, for the Commissioner to obtain a consultative psychiatric evaluation of Plaintiff to determine whether he suffers from a schizoaffective disorder. *Id.* at 11. The court noted that without this information, it could not address the other issues Plaintiff raised regarding credibility, medical opinions, and lay testimony. *Id.*

Following the consultative psychiatric evaluation, *see* AR 1386-1394, a different ALJ held another hearing on November 2, 2018. AR 707-731. On March 29, 2019, the ALJ issued a new decision again concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 679-706. Plaintiff did not file written exceptions and the Appeals Council did not opt to assume jurisdiction, so the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1484(d).

On June 6, 2019, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, his claims are properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant does not, the claim

is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If an impairment does, the claimant is *per se* disabled and qualifies for benefits. *Id.* If not, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 416.920(e)-(f). If it does, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 416.912(f), 416.920(g), 416.960(c).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144,

1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a

district court may not substitute its judgment for that of the ALJ. *Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable

interpretation that is supported by the evidence, it is not the role of the courts to

second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if

the evidence in the record is susceptible to more than one rational interpretation, if

inferences reasonably drawn from the record support the ALJ's decision, then the

court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings

and only briefly summarized here. Plaintiff was 34 years old when he filed his

application, which the regulations define as a younger person. AR 82; *see* 20

C.F.R. § 416.963(c). He was expelled from school in the 10th grade for assaulting

a teacher but later obtained his GED in his mid-20s while incarcerated. AR 47,

388, 465, 597, 1390. He can read, write, and communicate in English. AR 219. He

has a history of abusing alcohol, marijuana, crack cocaine, powder cocaine, heroin,

and methamphetamine. AR 388, 464, 597, 1390-91. He has past relevant work as a

telemarketer, salesman, waiter, materials handler, construction worker, and carpet

layer. AR 243-253, 694, 727-28.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

## V.    The ALJ's Findings

The ALJ determined that Plaintiff had not been under a disability within the meaning of the Act since January 30, 2013 (the date he filed his application). AR 683, 695-96.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application filing date. AR 684.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, mood disorder, anxiety, personality disorder, and substance addiction. AR 684.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 685-86.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), albeit with some additional limitations. AR 686. The ALJ found that Plaintiff could occasionally climb, stoop, and crouch. AR 686. He could perform simple, repetitive, routine tasks with brief and superficial interaction with coworkers and supervisors, but could not work with the general public. AR 686. Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 694.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 695. These included the jobs of a production assembler, an agricultural produce sorter and grader, and a packing line worker. AR 695.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly discredited his subjective pain complaint testimony, and (2) improperly evaluated and weighed the medical opinion evidence. ECF No. 11 at 2, 9-21.

## VII.   Discussion

### A.    The ALJ did not Improperly Reject Plaintiff's Subjective Complaints

Plaintiff first argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 11 at 9-17.

Once a claimant produces objective medical evidence of an underlying impairment that could reasonably produce some degree of the symptoms alleged, the ALJ can reject the claimant's symptom testimony only by providing "specific, clear, and convincing reasons." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, this standard does not apply when there is evidence of malingering in the record. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 599 (9th Cir. 1999).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

The ALJ does not need to make a specific finding of malingering, as long as affirmative evidence in the record shows malingering.[2] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see Lynn v. Comm'r of Soc. Sec.*, No. 2:19-cv-0090-TOR, 2019 WL 6717025, at *4 (E.D. Wash. 2019). Thus, if affirmative evidence in the record shows malingering, the ALJ may reject the claimant's testimony. *See Morgan*, 169 F.3d at 599.

Here, the ALJ found that Plaintiff's complaints of disabling limitations were undermined by: (1) affirmative evidence in the record that suggested malingering; (2) Plaintiff's self-reported daily activities; (3) his significant drug and alcohol abuse, which providers believed exacerbated his mental health symptoms; (4) his inconsistent reports of his mental health symptoms, as well as his reasons for not being able to attend school; (5) the fact that he only sought minimal treatment for

---

[2] The parties dispute whether ALJs are required to make a specific finding that a claimant was malingering for the clear-and-convincing-reasons standard to no longer apply. *See* ECF No. 12 at 2; No. 13 at 3. The majority of recent cases dealing with this issue have rejected the requirement of a specific malingering finding in favor of the more deferential requirement that evidence of malingering need only be present in the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) (noting that *Robbins* "is in some tension with" *Vasquez* and applying the *Vasquez* malingering standard); *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693 (9th Cir. 2009) (requiring only "affirmative evidence showing that the claimant is malingering" to reject a claimant's testimony without providing clear and convincing reasons); *Carmickle*, 533 F.3d at 1160 n.1. "Consistent with the recent majority approach, this Court applies the rule that the ALJ 'does not need to make a specific finding of malingering, so long as affirmative evidence in the record shows malingering.'" *Lynn A. v. Comm'r of Soc. Sec.*, No. 2:19-CV-0090-TOR, 2019 WL 6717025, at *4 (E.D. Wash. 2019) (quoting *Mobbs v. Berryhill*, No. 3:17-cv-05374-TLF, 2017 WL 6759321, at *6 (W.D. Wash. 2017)).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

his lumbar condition; and (6) the generally benign physical and mental examination findings throughout the medical record. AR 687-692.

### 1.    Evidence suggesting malingering

The ALJ reasoned that Plaintiff's subjective complaints were not entirely credible because evidence in the record suggested malingering. AR 691. Among other things, the ALJ relied on a 2013 psychological evaluation from Aaron Burdge, Ph.D. AR 691; *see* AR 387-407. Dr. Burdge administered the Personality Assessment Inventory and found that Plaintiff "consistently endorsed items that portray[ed] himself in an especially negative or pathological manner." AR 389. This led Dr. Burdge to opine that "[s]ome deliberate distortion of the clinical picture may be present; the critical items should be reviewed to evaluate the possibility of malingering." AR 389.

In addition to testing, Dr. Burdge interviewed Plaintiff and noted that although Plaintiff reported "auditory and tactile hallucinations," he did not "appear to respond to any internal stimuli during the interview and did not appear to be suffering from a severe mental illness." AR 389. Dr. Burdge also found that Plaintiff "did **_not_** appear to put forth adequate effort during the interview process." AR 391 (emphasis in original). This all led Dr. Burdge to make a rule-out diagnosis of malingering. AR 389.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

Moreover, the psychologist who interpreted Plaintiff's Personality Assessment Inventory, Dr. Leslie Morey, opined that Plaintiff "may not have answered in a completely forthright manner." AR 398. Dr. Morey also noted that Plaintiff's results indicated "exaggeration" and that he appeared "particularly motivated to *appear* to have" certain problems, including physical signs of anxiety, low frustration tolerance, impact of traumatic events, etc. AR 398-99 (emphasis added). Dr. Morey also suggested malingering as a rule-out diagnosis. AR 403-04.

Additionally, psychologist Jay Toews, Ed.D., testified that Plaintiff's Personality Assessment Inventory results were "most consistent with a desire to not cooperate or with actually malingering." AR 724.

The ALJ also observed that in December 2012, Plaintiff went to the emergency room "endorsing auditory hallucinations" and the hospital detained him as a danger to himself. AR 434. However, the attending psychiatrist, Dr. Jamie Simmons, noted that "[u]pon admit he was reporting hallucinations but his affect did not match these reports." AR 434. Similarly, psychologist James Bailey, Ph.D., reviewed one of Plaintiff's psychological assessments and noted that it was "unusual for an individual troubled by paranoid delusions to be so precise and maintain a professional demeanor in presenting his own illness." AR 99. Dr. Bailey also commented on Plaintiff's Personality Assessment Inventory results, noting

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1    that he reported "bizarre and unlikely symptoms" and that this indicated "both

2    exaggeration and minimization." AR 99.

3         In addition to the opinions of the mental health providers, the ALJ also

4    relied on statements from Plaintiff himself as evidence that suggested malingering.

5    AR 691. During a medication management visit, Plaintiff told a provider that he

6    was not working because "my lawyer says if I work it could hurt my chances with

7    disability." AR 543. During another visit, he said that he sat around doing nothing

8    all day because he was "fighting a disability claim." AR 641. The ALJ interpreted

9    these statements as implying that Plaintiff "was not seeking work because he was

10   trying to get disability, not because of his impairments." AR 691.

11        Relying on *Mohammad v. Colvin*, 595 F. App'x 696 (9th Cir. 2014), the

12   Commissioner argues that the foregoing evidence suggests malingering and

13   supports the ALJ's decision to discount Plaintiff's credibility. ECF No. 12 at 2-3.

14   In *Mohammad*, the court found the ALJ's finding was supported by substantial

15   evidence when the record contained "three instances in which [the claimant's]

16   symptoms disappeared after arriving at the emergency room with her son, a

17   psychological evaluation that refers to a rule-out malingering diagnosis made by

18   another examining psychologist, and the provisional malingering diagnosis from

19   [an examining psychologist]." *Mohammad*, 595 F. App'x at 697-98; *see also Berry*

20   *v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (malingering established where

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 12

1    claimant reported refraining from doing volunteer work "for fear of impacting his

2    disability benefits," and claimed disability dating from his last day of employment

3    despite admitting he left his job because his employer went out of business).

4        Similarly, the record in this case contains rule-out diagnoses of malingering

5    from Dr. Burdge and Dr. Morey, the testimony of Dr. Toews who stated that

6    Plaintiff's test results were "consistent with" malingering, Dr. Simmons'

7    observation that Plaintiff's complaints of auditory hallucinations "did not match"

8    his affect, Dr. Bailey's comments, and Plaintiff's statements to his providers that

9    he did not want to work because it would "hurt [his] chances with disability." AR

10   99, 389-391, 403-04, 434, 543, 724. This evidence suggests malingering and

11   supports the ALJ's finding that Plaintiff's subjective complaints were not entirely

12   credible. *See Mohammad*, 595 F. App'x at 697-98.

13   **B.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

14       Plaintiff argues that the ALJ erred in assessing and weighing the medical

15   opinion evidence from numerous providers: (1) examining psychologist Rebekah

16   Cline, Psy.D., (2) examining psychologist Karen Mansfield-Blair, Ph.D., (3)

17   treating mental health counselor M. Gabriela Mondragon, MSW, (4) examining

18   psychologist Tasmyn Bowes, Psy.D., (5) reviewing physicians Norman Staley,

19   M.D. and Brent Packer, M.D., and (6) treating nurse practitioner Marybeth

20   Wheeler, ARNP. ECF No. 11 at 17-21.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

### 1.    Legal standards

Title XVI's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

Importantly, the "specific and legitimate" standard discussed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

These include licensed physicians, licensed psychologists, and various other specialists such as optometrists and podiatrists. *See* 20 C.F.R. § § 416.902(a). "Other sources" for opinions—such as nurse practitioners, counselors, teachers, social workers, etc.—are not entitled to the same deference as acceptable medical sources.[3] *Molina*, 674 F.3d at 1111; *see* 20 C.F.R. § 416.927(f). ALJs may discount "other source" opinions by providing "germane" reasons. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### 2.    Examining psychologist Rebekah Cline, Psy.D.

Dr. Cline evaluated Plaintiff twice: first in November 2014, then again in August 2016. AR 596-601, 1097-1103. In her 2014 evaluation, she diagnosed Plaintiff with chronic PTSD, anxiety disorder with features of panic disorder, and she made a provisional diagnosis of schizoaffective disorder, bipolar type. AR 598. She opined that Plaintiff's symptoms from these conditions "very significantly" limited his abilities to communicate, maintain appropriate behavior, and complete a normal workday and workweek without interruptions. AR 599. She believed these limitations would last for 9 to 12 months with adequate treatment. AR 599.

In her 2016 evaluation, Dr. Cline diagnosed Plaintiff with moderate alcohol use disorder, mild to moderate marijuana use disorder, chronic PTSD, panic

---

[3] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 416.902(a)(7)-(8).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

1    disorder, and schizoaffective disorder, bipolar type. AR 1099. She continued to

2    opine that he would have very significant problems in numerous areas of

3    psychological functioning. AR 1100. She noted, however, that his ongoing alcohol

4    and marijuana use exacerbated his symptoms. AR 1101. She believed his

5    limitations would last for 12 to 24 months with adequate treatment. AR 1101.

6           The ALJ assigned little weight to Dr. Cline's opinions, reasoning that her

7    stated limitations (1) did not accurately reflect Plaintiff's true limitations, given her

8    acknowledgment that his alcohol and drug use exacerbated the severity of his

9    psychological symptoms, and (2) were not permanent and could be improved with

10    treatment, which Plaintiff received. AR 689; *see Coffman v. Astrue*, 469 F. App'x.

11    609, 611 (9th Cir. 2012) (ALJs may properly reject medical opinions that are

12    rendered without knowledge of or fail to adequately account for a claimant's

13    substance abuse); *Marlin D. v. Saul*, No. 2:18-CV-00360-MKD, 2020 WL

14    1518628, at *9 (E.D. Wash. 2020) (same); *Cook v. Comm'r of Soc. Sec.*, No. 2:16-

15    CV-00414-MKD, 2018 WL 1041166, at *7 (E.D. Wash. 2018) (same); *Carmickle*,

16    533 F.3d at 1165 (ALJ properly discounted physician's opined limitation, when the

17    physician gave the claimant a two-week excuse from work and released him to

18    return full time two months later); *James D. v. Berryhill*, 2018 WL 6174252, at *6

19    (W.D. Wash. 2018) (Dr. Cline's opinion that impairment would last "0-3 months"

20    was temporary and therefore properly rejected).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

1    Here, the ALJ's second rationale was error, at least with respect to Dr.

2    Cline's 2016 opinion. The durational requirement for a severe impairment is 12

3    months. 20 C.F.R. § 416.909. As the cases above illustrate, when a doctor opines

4    that an impairment will improve within that time frame, that opinion is of limited

5    relevance. *See Carmickle*, 533 F.3d at 1165. But Dr. Cline opined in 2016 that

6    Plaintiff's psychological limitations would last 12 to 24 months with treatment. AR

7    1101. Discounting this opinion on the grounds that it only expressed temporary

8    restrictions was therefore improper. *Hines v. Astrue*, 2012 WL 834310, at *5

9    (W.D. Wash. 2012).

10    However, the ALJ also discounted Dr. Cline's opinions on the grounds that

11    they overstated Plaintiff's limitations, given that his alcohol and drug abuse

12    exacerbated his psychological symptoms. AR 689. Plaintiff argues that this was

13    also error, contending that the ALJ should have considered "the effects of all of

14    [his] impairments, including substance abuse," in the sequential disability

15    determination. ECF No. 11 at 18. In so arguing, Plaintiff relies solely on

16    *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001), which concerned the

17    proper procedures for ALJs to follow when they conduct what is called a "drug

18    addiction and alcoholism (DAA) materiality determination."[4] *Id.* at 954. Unlike in

19

20    _____

    [4] This process stems from a provision Congress added to Title XVI as part of the Contract
    with America Advancement Act of 1996, which terminated benefits for those whose primary
    impairment is drug addiction, alcoholism, or both. 42 U.S.C. §1382c(a)(3)(J); *see* Pub. L. No.
    104-121, 110 Stat. 847.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17**

*Bustamante*, the ALJ did not conduct a DAA materiality determination in this case. *See id.* at 952; AR 682-696. It is not clear, nor does Plaintiff explain, how *Bustamante* directly applies in this situation—*i.e.*, where the ALJ discounts a provider's opinion on the grounds that it overstates the claimant's limitations—and therefore Plaintiff has not established that the ALJ's first rationale for discounting Dr. Cline's opinion was improper.

### 3. Examining psychologist Karen Mansfield-Blair, Ph.D.

Dr. Mansfield-Blair evaluated Plaintiff in September 2018. AR 1389-1394. Her primary diagnosis was cocaine use disorder, in sustained remission. AR 1393. She also included rule-out diagnoses of alcohol use disorder, antisocial personality disorder, and unspecified schizophrenia/other psychotic disorder. AR 1393. Her prognosis for Plaintiff's mental health was "guarded"—she believed his substance abuse issues would improve with treatment but that his personality disorder would not, even with therapy and medication.

With respect to Plaintiff's functional limitations, Dr. Mansfield-Blair opined that Plaintiff would not have trouble performing detailed and complex tasks or work activities on a consistent basis, given his normal level of intellectual functioning. AR 1394. However, she opined that he would have trouble interacting with supervisors and coworkers because of his "lifelong pattern of conflictual relationships" and tendency to be verbally and physically aggressive. AR 1394.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 18

1   She also believed that he would have trouble dealing with workplace stress, as he

2   "exhibited a low level of distress tolerance skill during the interview." AR 1394.

3   Finally, she opined that he "would have difficulty maintaining regular attendance

4   and completing a normal workday/workweek without interruptions from a

5   psychiatric condition given his diagnoses." AR 1394.

6        The ALJ adopted Dr. Mansfield-Blair's opinion and found that Plaintiff

7   could only have brief and superficial interactions with coworkers and supervisors,

8   that he could not interact at all with the public, and that he could only perform

9   simple, repetitive, routine tasks. AR 688.

10       Plaintiff argues that the ALJ ignored Dr. Mansfield-Blair's limitation that he

11  would "have difficulty maintaining regular attendance and completing a normal

12  workday/workweek without interruptions from a psychiatric condition given his

13  diagnoses." ECF No. 11 at 18; AR 1394. However, throughout Dr. Mansfield-

14  Blair's report, the only specific issues she identified related to Plaintiff's social

15  functioning (*i.e.*, difficulty with supervisors, coworkers, and the public) and stress

16  tolerance. AR 1394. Although she later concluded that Plaintiff's diagnoses would

17  cause attendance issues and "interruptions" in his workday, this statement can be

18  rationally interpreted as referring to Plaintiff's social and stress-related limitations,

19  which the ALJ accounted for. AR 686. When the record can be rationally

20  interpreted in multiple ways, the Court is obligated to defer to the ALJ's resolution

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

of these issues, even if it might have interpreted the evidence differently. *Molina*, 674 F.3d at 1111.

### 4.    Treating mental health counselor M. Gabriela Mondragon, MSW

Ms. Mondragon provided ongoing counseling to Plaintiff beginning in March 2013. AR 428. In October 2018, she completed a mental source statement outlining his psychological limitations. AR 1397-1400. She opined that he had no limitations in some areas, such as understanding, memory, and carrying out instructions, but had marked or extreme limitations in other areas, which included using public transportation, completing a normal workday/workweek without interruptions, and interacting with and responding appropriately to the general public, supervisors, and coworkers. AR 1397-1398.

The ALJ assigned little weight to Ms. Mondragon's opinion, reasoning that (1) it was contradicted by the testimony of Dr. Toews, who was a more qualified and reliable medical source, and (2) it was not an accurate reflection of Plaintiff's true limitations because it failed to acknowledge his significant substance abuse issues, which exacerbated the severity of his psychological symptoms. AR 688-89; *see* 20 C.F.R. § 416.927(c)(5) (the opinions of specialists are assigned more weight in their areas of specialty than non-specialists); *Coffman*, 469 F. App'x. at 611; *Marlin D.*, 2020 WL 1518628, at *9; *Cook*, 2018 WL 1041166, at *7.

1    With respect to the ALJ's second rationale, Plaintiff argues that Ms.

2  Mondragon expressly stated that her opinion excluded the effects of Plaintiff's

3  drug and alcohol use. ECF No. 11 at 19. Plaintiff is correct. *See* AR 1399 ("The

4  limitations noted do not include limitations from current alcohol or drug

5  use."). Accordingly, the ALJ erred in discounting Ms. Mondragon's opinion on

6  this basis.

7    However, the ALJ also reasoned that Ms. Mondragon's opinion was

8  contradicted by Dr. Toews, who was a more qualified and reliable medical source.

9  AR 688. Plaintiff argues that their opinions did not actually conflict because "Dr.

10 Toews offered no testimony as to [his] functional limitations." ECF No. 11 at 18-

11 19. However, Dr. Toews noted Dr. Burdge's assessment that Plaintiff had

12 "no work related limitations" and that his issues were "due to drug and alcohol

13 problems." AR 721. Dr. Toews also testified that based on his review of

14 the medical records, Plaintiff's psychiatric and psychological symptoms "were all

15 within normal limits." AR 721. He then testified that the record did

16 not support "evidence for significant psychiatric distress." AR 721. The ALJ was

17 entitled to find that this testimony conflicted with Ms. Mondragon's opinion, that

18 Dr. Toews was more qualified and reliable, and that Ms. Mondragon's opinion

19 should receive lesser weight as a result.

20 ///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 21

### 5.    Evaluating psychologist Tasmyn Bowes, Psy.D.

Dr. Bowes evaluated Plaintiff in June 2018. AR 1332-37. She diagnosed him with PTSD, borderline personality disorder, and persistent depressive disorder. AR 1335. With respect to functional limitations, she opined that he was "significantly" limited in his abilities to follow "very short and simple instructions," learn new tasks, perform routine tasks, make simple decisions, and ask simple questions. AR 1335-36. She also believed he was "very significantly" limited in his abilities to follow detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual, adapt to changes, and communicate effectively. AR 1335-36. She believed he was entirely unable to maintain appropriate behavior or complete a normal workday/workweek without interruptions. AR 1336.

The ALJ assigned little weight to Dr. Bowes' opinion, reasoning that it was inconsistent with Plaintiff's daily activities. AR 689; *see Morgan*, 169 F.3d at 601-02 (ALJs may reject an opinion that is inconsistent with the claimant's reported daily activities).

Plaintiff argues that his activities were minimal and thus consistent with Dr. Bowes' limitations. ECF No. 11 at 19. However, the record demonstrates that Plaintiff's daily activities included driving his girlfriend to work, driving his nephews to school, cleaning the house, caring for and walking his dogs, caring for various other animals, attending to his personal hygiene, building computers,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22**

drawing, doing bead work, preparing meals, doing laundry, visiting with his neighbors, and talking with his daughter. AR 27-28, 687-88, 691. The ALJ reasonably concluded that these activities belied Dr. Bowes' claims that Plaintiff had significant problems following "very short and simple instructions," learning new tasks, performing routine tasks, making simple decisions, following a schedule, and being punctual. Accordingly, the ALJ properly discounted Dr. Bowes' opinion.

### 6.    Reviewing physicians Norman Staley, M.D. and Brent Packer, M.D.

Dr. Staley reviewed Plaintiff's records in June 2013 and concluded that he had degenerative disc disease but could nevertheless lift and carry up to 25 pounds, stand and walk for six hours at a time, and sit for six hours at a time. AR 97, 100-101. The ALJ assigned significant weight to Dr. Staley's opinion, reasoning that (1) Dr. Staley was an expert on disability case evaluation, (2) his opinion was consistent with Plaintiff's daily activities, and (3) his opinion was also consistent with Plaintiff's generally benign examination findings throughout the medical record. AR 29.

Dr. Packer gave an opinion in January 2013. *See* AR 408-410. In doing so, he reviewed only two medical records: (1) a chart note from Plaintiff's December 2012 appointment with Caryn Jackson, M.D., and (2) a December 2012 MRI study that Dr. Jackson had ordered. AR 410; *see* AR 373-76, 385. Dr. Packer agreed that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23**

Plaintiff had degenerative disc disease and opined that Plaintiff was unable to work. AR 409-410. He explained that Plaintiff's "imaging findings suggesting 1 or two level radiculopathy" along with Plaintiff's daily activities indicated that Plaintiff would be unable to stand or walk for even brief periods. AR 410.

The ALJ assigned "very little weight" to Dr. Packer's opinion, reasoning that he "relied exclusively on the evaluation of Dr. Jackson," which was unpersuasive for separate reasons. AR 30; *see Bayliss*, 427 F.3d at 1217 (doctor's failure to review other medical records is a basis to discount his or her opinion); 20 C.F.R. § 416.927(c)(6) (in weighing a medical opinion, ALJ will consider "extent to which a medical source is familiar with the other information in your case record"); *Cox v. Astrue*, 2012 WL 3862135, at *8 (D. Or. 2012) ("[F]ailure to review all records is a legitimate reason to reject a medical opinion.").

Plaintiff argues that the ALJ erred in weighing the relative weight of Dr. Staley's and Dr. Packer's opinions. ECF No. 11 at 20-21. He acknowledges that Dr. Staley reviewed more of the medical record, but argues that the records Dr. Packer *did* review were more specific to his lumbar impairment. *Id.* at 20. He also argues that Dr. Packer explained his opinion and thought process in more detail than Dr. Staley did. *Id.* at 20-21. However, neither of these arguments establish that the ALJ's reasoning was wrong—Plaintiff is simply saying that he would have weighed the opinions differently. But it is the ALJ's province to weigh the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24**

persuasive value of the various medical opinions and absent some legal error—

which Plaintiff fails to identify here—it is not the Court's role to reassess those

determinations. *Thomas*, 278 F.3d at 954-59.

Plaintiff also argues that the ALJ failed to acknowledge that Dr. Packer

reviewed both Dr. Jackson's chart note *and* the subsequent MRI. ECF No. 11 at

20. While this is true, it does not affect the ALJ's substantive rationale—that Dr.

Staley reviewed significantly more of Plaintiff's medical file than Dr. Packer did.

### 7.    Treating nurse practitioner Marybeth Wheeler, ARNP

Nurse Wheeler treated Plaintiff from January 2018 to July 2018. AR 1403.

She diagnosed him with left-side sciatica, facet arthritis, degenerative disc disease,

and knee instability. AR 1403. She opined that the pain from these conditions

"require[d] him to rest all day." AR 1403. She stated that he could not work full

time due to pain. AR 1404.

The ALJ assigned little weight to Nurse Wheeler's opinion, reasoning that

(1) she only treated Plaintiff for seven months, and (2) that her opinion was

inconsistent with Plaintiff's daily activities. AR 689; *see* 20 C.F.R. §

416.927(c)(2)(i) ("[T]he longer a treating source has treated you and the more

times you have been seen by a treating source, the more weight we will give to the

source's medical opinion."); *Morgan*, 169 F.3d at 601-602.

Plaintiff argues that the ALJ's first rationale was error because "there is no contrary opinion from a doctor with a longer treatment record." ECF No. 11 at 21. Plaintiff cites no authority imposing such a requirement. *See id.* Plaintiff also argues that the ALJ gave significant weight to a doctor who did not treat Plaintiff at all, implying that the ALJ applied this principle inconsistently. *Id.* However, the ALJ gave separate reasons for why he discounted the non-examining doctor's opinion. *See* AR 690.

Plaintiff argues the ALJ's second rationale was error because his activities were minimal and thus consistent with Nurse Wheeler's limitations. ECF No. 11 at 21. But Nurse Wheeler opined that Plaintiff was required "to rest all day." AR 1403. This was inconsistent with Plaintiff's activities as outlined above, *see* AR 687-88, 691, and therefore was a proper basis for discounting Nurse Wheeler's opinion.

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error.

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2.     Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 26

3.    Judgment shall be entered in favor of Defendant and the file shall be

closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

Order, forward copies to counsel, and **close the file**.

**DATED** this August 13, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 27